

CLERK'S OFFICE U.S. DIST. COURT
FILED
JAN 09 2011
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| HERBERT A. McFADDEN, | ) |
| and | ) Civil Action No. 7:11-cv-335 |
| ROSETTA E. McFADDEN, | ) |
| Plaintiffs, | ) |
| v. | ) MEMORANDUM OPINION |
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, et al., | ) By: Hon. James C. Turk |
| | ) Senior United States District Judge |
| Defendant. | ) |

This matter is presently before the Court on the Defendant Samuel I. White ("White")'s Motion to Dismiss, (Dkt. Nos. 8 & 9), and Defendants Flagstar Bank, F.S.B. ("Flagstar") and Federal National Mortgage Association ("Fannie Mae")'s Motion to Dismiss, (Dkt. Nos. 13 & 14), pursuant to Federal Rule of Civil Procedure 12(b)(6). The Plaintiff responded to both motions to dismiss. (Dkt. Nos. 17, 19). Defendants Flagstar and Fannie Mae filed a Memorandum in Further Support of Their Motion to Dismiss (Dkt. No. 24). The Court heard oral argument on these motions on December 19, 2011. For the following reasons, Defendant White's Motion to Dismiss is **GRANTED** and Defendants Flagstar and Fannie Mae's Motion to Dismiss is **GRANTED**.

### I. Procedural and Factual Background

This action arises out of a transaction for a modification to a residential mortgage loan and subsequent foreclosure sale. Plaintiffs filed suit in the Circuit Court of Pulaski County,

Virginia. Defendants Flagstar and Fannie Mae removed to federal court pursuant to 28 U.S.C. §§ 1331, 1441, and 1446. Subsequently, this Court denied Plaintiffs' Motion for Remand.

In their Complaint, Plaintiffs plead six claims, each of which is based on state law: (1) quiet title; (2) equitable relief from foreclosure; (3) negligence; (4) fraud; (5) breach of covenant of good faith and fair dealing; and (6) violation of the Virginia Consumer Protection Act ("VCPA").

Plaintiffs obtained a loan of $116,500 from Flagstar to finance the purchase of a home in Pulaski County, Virginia, on July 3, 2007. (Compl. ¶¶ 1, 5, 7). The loan was secured by a Deed of Trust that Plaintiffs allege falsely identified the beneficiary as the Mortgage Electronic Registration Systems, Inc. ("MERS") when the true beneficiary was Flagstar. (Compl. ¶¶ 5, 8). Plaintiffs further allege that Flagstar sold the loan to Fannie Mae, and that at all times relevant to this lawsuit Fannie Mae was the beneficiary of the loan secured by the Deed of Trust. (Compl. ¶ 10). Flagstar remained the mortgage servicer. (Compl. ¶ 9).

Subsequently, Plaintiffs experienced difficulty making the required mortgage payments. (Compl. ¶ 11). Plaintiffs allege that on August 18, 2009, Flagstar promised to give them a loan modification if they qualified under the Home Affordable Modification Program. (Id.) Plaintiffs then submitted the required documentation to Flagstar. (Compl. ¶ 12). Plaintiffs believe they met the eligibility criteria and that Flagstar should have offered them a loan modification. (Compl. ¶¶ 13-14). Between August 2009 and March 2011, Plaintiffs attempted to obtain the allegedly promised loan modification. (Compl. ¶¶ 12-21). In February 2011, Plaintiffs received a Notice of Default, and their loan was referred to Defendant White, trustee for the foreclosure. (Compl. ¶¶ 22-23). The Notice of Default indicated that Flagstar was the present holder or authorized agent of the holder of the note secured by the Deed of Trust. (Compl. ¶ 23).

Concerned that their house was about to be foreclosed on, Plaintiffs called Flagstar. Plaintiffs allege that Flagstar orally told them their loan modification was in process and no foreclosure would occur, but on March 10, 2011, White administered the foreclosure sale and the property was sold to Flagstar. (Compl. ¶¶ 24-27). Thereafter, Flagstar transferred the property to Fannie Mae. (Compl. ¶ 28). Finally, Plaintiffs allege that they did not receive notice that their home loan modification had been denied until March 22, 2011, (Compl. ¶ 39),[1] and that had they received notification prior to the foreclosure sale they would have taken steps to prevent the foreclosure, (Compl. ¶ 38).

## II. Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When evaluating a complaint under Rule 12(b)(6), courts must "accept the allegations in the complaint as true, and draw all reasonable factual inferences in favor of the plaintiff." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Trulock v. Freeh, 275 F.3d 391, 405 (4th Cir. 2001). Notwithstanding Rule 8(a)(2) and while reiterating that "detailed factual allegations" are not required, the Supreme Court has specified that pleadings which merely offer "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement" are not sufficient. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007)). Under Iqbal courts are first required to identify "the allegations in the complaint that are not entitled to the assumption of truth" because they are no more than legal conclusions unsupported by the facts. Id. at 1951. Second, courts are required to draw on their "judicial experience and common sense" to determine "whether a complaint states a plausible claim for relief." Id. at 1950. Under

---

[1] The denial letter was dated March 14, 2011. (Compl. ¶ 36).

3

the Iqbal standard a plaintiff must do more than allege "a sheer possibility that a defendant has acted unlawfully." Id. at 1949.

## III. Discussion

### A. Preemption Under the Homeowners' Loan Act

Defendants Flagstar and Fannie Mae argue that Plaintiffs' six claims, all of which rely on state law, are preempted by the Home Owners Loan Act ("HOLA"), 12 U.S.C. § 1464 et seq. Although there is a presumption against preemption, the presumption is inapplicable in those areas where there is a history of significant federal presence. United States v. Locke, 529 U.S. 89, 108-20 (2000). Federal law can preempt state law in three distinct ways. First, Congress may preempt state law by expressly saying so in a statute. Jones v. Rath Packing Co., 430 U.S. 519, 525 (1977). Second, under "field preemption," preemption occurs if federal laws are "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement" federal law. Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947) (citing Penn. R. Co. v. Pub. Serv. Comm'n, 250 U.S. 566, 569 (1919)). Third, preemption applies when state and federal law conflict such that compliance with both is impossible or if application of state law would impede Congress's purposes and objectives. Wis. Pub. Intervenor v. Mortier, 501 U.S. 597, 604 (1991) (citing Fla. Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142-3 (1963); Hines v. Davidowitz, 312 U.S. 52, 67 (1941)).

HOLA empowers the Office of Thrift Supervision ("OTS") to oversee and regulate federal savings associations and federal savings banks. 12 U.S.C. § 1464; see also Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 161-62 (1982). To carry out its mandate OTS promulgated regulations that occupy the entire field of lending regulation. 12 C.F.R. § 560.2(a). Section 560.2(a) provides, in pertinent part:

4

> (a) *Occupation of field.* Pursuant to 4(a) and 5(a) of the HOLA, 12 U.S.C. § 1463(a), 1464(a), OTS is authorized to promulgate regulations that preempt state laws affecting the operations of federal savings associations when deemed appropriate to facilitate the safe and sound operation of federal savings associations, to enable federal savings associations to conduct their operations in accordance with the best practices of thrift institutions in the United States, or to further other purposes of the HOLA.... *OTS hereby occupies the entire field of lending regulation for federal savings associations.* OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation.

12 C.F.R. § 560.2(a) (emphasis added). Furthermore, OTS has provided thirteen examples of the kinds of state banking laws that are preempted, such as: the terms of credit, loan related fees, disclosure and advertising requirements, disbursements and repayments, and "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages." 12 C.F.R. § 560.2(b). However, HOLA does not preempt all state laws. 12 C.F.R. § 560.2(c). Under HOLA "[s]tate laws of the following types are not preempted *to the extent that they only incidentally affect the lending operations of Federal savings associations* or are otherwise consistent with the purposes of paragraph (a) of this section." Id. (emphasis added). The state laws listed are: contract and commercial law, real property law, homestead laws, tort law, and criminal law. Id.

OTS has also promulgated guidance regarding how to analyze whether a state law is preempted. OTS has said:

> When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For

> these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

61 Fed. Reg. 50951, 50966-67 (Sept. 30, 1996).

The Fourth Circuit has yet to address the scope of preemption under HOLA. The Eighth and Ninth Circuits have applied § 560.2 and found broad preemption, while the Seventh Circuit has found § 560.2 to apply quite narrowly. Davis v. World Savings Bank, No. 10-1761, 2011 WL 3796170, at *6 (D.D.C. Aug. 29, 2011) (citing Casey v. FDIC, 583 F.3d 586 (8th Cir. 2009); Silvas v. E*Trade Mortg. Corp., 514 F.3d 1001 (9th Cir. 2008); In re Ocwen Loan Servicing, LLC Mortg. Servicing Litig., 491 F.3d 638 (7th Cir. 2007)). In finding broad preemption the Ninth Circuit described HOLA and its associated regulations as a "radical and comprehensive response to the inadequacies of the existing state system," and "so pervasive as to leave no room for state regulatory control." Silvas, 514 F.3d at 1004–05 (quoting Conference of Fed. Sav. & Loan Ass'ns v. Stein, 604 F.2d 1256, 1257, 1260 (9th Cir. 1979), aff'd, 445 U.S. 921). Although the Seventh Circuit has taken a narrower approach to HOLA preemption, even under the narrow approach, HOLA still preempts certain state law claims. Ocwen, 491 F.3d at 643-44. The Seventh Circuit has distinguished based on "the precise allegations in support of a claim" and whether or not the "common law claims raised are inextricably linked to the loan transaction and the documents related to the loan." Davis, 2011 WL 3796170, at *9.

Pursuant to OTS' guidance, this Court's determination of whether Plaintiffs' claims are preempted begins by determining whether any of Plaintiffs' claims are preempted under § 560.2(b). Although Plaintiffs style their claims as common law fraud claims,[2] the gravamen of Plaintiffs' Complaint and basis for all of Plaintiffs' state law claims is Flagstar's alleged failure to provide a loan modification and the resulting foreclosure sale by White. Plaintiffs sought a

---

[2] The Court is not bound by Plaintiffs' framing and instead looks to the substance of the claims to determine whether they are preempted. See Pinney v. Nokia, Inc., 402 F.3d 430, 441 (4th Cir. 2005).

6

loan modification because they were experiencing difficulty paying their current mortgage and wanted the terms of the loan amended to make payments more manageable. (Compl. ¶ 11). The Court begins by observing that, by its very nature, obtaining a loan modification involves "processing, origination, [and] servicing ... of ... mortgages," 12 C.F.R. § 560.2(b)(10), as a modification requires processing and the resulting mortgage requires servicing. Furthermore, state laws are preempted if they purport to regulate "terms of credit, including amortization of loans and the deferral and capitalization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan." 12 C.F.R. § 560.2(b)(4). Because a loan modification by definition results in new loan terms, a request for a loan modification clearly relates to "terms of credit" and is expressly preempted. See Ayala v. World Savings Bank, FSB, 616 F.Supp.2d 1007, 1016-18 (C.D. Cal. 2009) (holding that claims of fraud based on allegations regarding the terms of credit of a loan are preempted by HOLA); Stefan v. Wachovia, No. C 09–2252 SBA, 2009 WL 4730904, at *3 (N.D. Cal. Dec. 7, 2009) (holding plaintiffs' state law claims regarding the process by which the foreclosure occurred were preempted by HOLA). Therefore, because the substance of Plaintiffs' claims concern activities expressly preempted by 12 C.F.R. § 560.2(b) Plaintiffs' claims must be dismissed.

Plaintiffs' attempt to avoid the application of 12 C.F.R. § 560.2(b) by arguing fraud is a common law tort that is not preempted under 12 C.F.R. § 560.2(c) is unpersuasive. Under § 560.2(c) state laws that only "incidentally affect lending operations" are not preempted. 12 C.F.R. § 560.2(c). Accordingly, the Court considers whether the fraud allegations at issue only "incidentally affect lending." The essence of the McFaddens' fraud claim depends in part on whether the McFaddens did, in fact, satisfy the criteria for a loan modification under the Making

Home Affordable Program. To the extent Plaintiffs allege they were wrongfully denied a loan modification under the Making Home Affordable Program, Plaintiffs clearly seek to regulate the manner in which loan modifications are approved, which contradicts the purpose of HOLA, as explained by OTS. See 12 C.F.R. § 560.2(a) ("OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation."). As another court in this Circuit has noted, "it is inappropriate, if not impossible, to dissect each step in a lending activity that is covered under HOLA…" Down v. Flagstar Bank, F.S.B., No. 3:10-cv-847, 2011 WL 1326961, at *4 (E.D. Va. Apr. 4, 2011). Because the alleged fraud and the McFaddens' eligibility for the promised loan are inextricably linked, this Court concludes that the fraud allegations clearly "affect lending," and thus, the law is preempted.

### B. Failure to State a Claim

Additionally, even if Plaintiffs claims' were not preempted by federal law, each of Plaintiffs state law claims fail to state a claim.

*1. Counts I and II: Quiet Title Claim and Equity Action to Set Aside Foreclosure*

In Counts I and II of the Complaint, Plaintiffs challenge the validity of the Substitution of Trustee document and the Deed of Foreclosure. Plaintiffs' request the Substitution of Trustee and Deed of Foreclosure be declared void and cancelled, (Compl. ¶ 45), or that if their quiet title action is not successful that the Court use its equitable powers to set aside the foreclosure, (Compl. ¶ 53). In support of these counts, Plaintiffs allege that White's appointment as substitute trustee was not properly made. Specifically, the McFaddens allege that the Substitution of Trustee – signed by Flagstar Bank, FSB, (Compl. Ex. E) – was not signed by the beneficiary of the loan, which Plaintiffs' allege was Fannie Mae, (Compl. ¶ 10). Accordingly,

Plaintiffs argue the Court should strip White of his powers and find the foreclosure sale improper.

This argument is unconvincing for two reasons. First, having reviewed the language of the Note and the Deed of Trust, the Court finds no language limiting the assignability of either the Note or the Deed of Trust. Indeed, as Defendants point out, the Fourth Circuit has rejected the notion that the validity of a note or deed of trust is compromised by transfer to another party. Horvath v. Bank of N.Y., 641 F.3d 617, 619 (4th Cir. 2011). Furthermore, the language of the Substitution of Trustee document provides only that Flagstar Bank, FSB "is the present holder or the authorized agent of the holder of the note secured by the deed of trust." Therefore, even if Flagstar had transferred its interest in the Note, as the mortgage servicer it would still be authorized to sign the Substitution of Trustee.

Second, Plaintiffs challenge fails under the statute of frauds. The essence of Plaintiffs' claims rely on an oral promise allegedly made by Flagstar that it would modify the terms of Plaintiffs' home loan. Oral contracts affecting real property are unenforceable. Va. Code Ann. § 11-2 ("Unless a promise, contract, agreement ... or some memorandum or note thereof, is in writing and signed by the party to be charged or his agent, no action shall be brought ... [u]pon any agreement or contract for services to be performed in the sale of real estate ...."). Plaintiffs have not alleged the existence of any written agreement to modify the terms of the Note or the Deed of Trust, and thus without any such allegation the Court must dismiss Counts I and II.

*2. Count III: Fraud Against Flagstar*

Plaintiffs' claims of fraud against Flagstar must be dismissed for failure to plead the claim with particularity as required under Fed. R. Civ. P. 9(b). See Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 783-84 (4th Cir. 1999) (Rule 9(b) requires plaintiff plead "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby"). Plaintiffs fail to state the specific date and time at which the alleged promise took place or who at Flagstar made the alleged promise. See Compl. ¶ 25 ("Flagstar told Plaintiffs not to worry about the Notice, that their loan modification was in process, and that no foreclosure would occur.").

Second, Plaintiffs' fraud claims fail because Plaintiffs cannot allege reasonable reliance on Flagstar's alleged oral promise to modify their loan. To make out a fraud claim, one must prove: (1) a false representation, (2) of material fact, (3) made intentionally and knowingly, (4) with the intent to deceive, (5) the party alleging fraud relied on the false representation to their detriment, and (6) damage to the party alleging fraud. Cohn v. Knowledge Connections, Inc., 266 Va. 362, 367, 585 S.E.2d 578, 581 (2003).

As an initial matter, the Court notes that when the McFaddens decided to call Flagstar, they failed to follow the instructions contained in the Notice of Default they received. The notice clearly indicates that one should contact Samuel I. White for more information. (Compl. Ex. D). The notice provides both White's address and a telephone number to call. Id. However, whether or not it constitutes reasonable reliance to call Flagstar, the mortgage servicer, rather than the person listed on the Notice of Default need not be determinative in this case. As explained above, oral promises affecting real estate are unenforceable. Va. Code Ann. § 11-2.

10

As such, Virginia law precludes Plaintiffs from alleging they would have acted differently based on the alleged oral promise by Flagstar that it would not foreclose on their home.

*3. Count IV: Breach of Contract Against Fannie Mae*

Plaintiffs' claim for breach of contract against Fannie Mae is barred by the statute of frauds. Plaintiffs' allege that Fannie Mae directed Flagstar to "misrepresent that Plaintiffs would be given a trial plan and loan modification if they qualified...." (Compl. ¶ 61). As explained in detail above, because Plaintiffs' claim relies on alleged oral promise affecting real estate it is barred by the statute of frauds, Va. Code Ann. § 11-2, and must be dismissed.

*4. Count V: Negligence Against Flagstar*

Plaintiffs' claim for negligence must be dismissed because the duties that exist between Flagstar and the Plaintiffs lie solely in contract and do not sound in tort. It is well settled under Virginia law that a breach of duty that exists purely because of a contract does not give rise to a tort claim. Foreign Mission Bd. v. Wade, 242 Va. 234, 241, 409 S.E.2d 144, 148 (1991) (citing Spence v. Norfolk & W.R. Co., 92 Va. 102, 116 (1895)). Virginia law distinguishes between actions for tort and contract as follows:

> If the cause of complaint be for an act of omission or non-feasance which, without proof of a contract to do what was left undone, would not give rise to any cause of action (because no duty apart from contract to do what is complained of exists) then the action is founded upon contract, and not upon tort. If, on the other hand, the relation of the plaintiff and the defendants be such that a duty arises from that relationship, irrespective of the contract, to take due care, and the defendants are negligent, then the action is one of tort.

Richmond Metro. Auth. v. McDevitt Street Bovis, 256 Va. 553, 558, 507 S.E.2d 344, 346 (1998) (quoting Burks Pleading and Practice § 234 (4th ed. 1952)). Plaintiffs do not dispute this principle of Virginia law, but instead try to avoid its application by arguing that the McFaddens

11

do not have a current contractual relationship with Flagstar. The McFaddens assert that although their initial contract was with Flagstar, when Flagstar transferred its interest in the deed of trust to Fannie Mae that contractual relationship ended. The Court is not persuaded by this argument. The complained of act at issue is Flagstar's alleged failure to process the promised home loan modification. The duty to process a home loan modification exists solely because of contract. Sherman v. Litton Loan Servicing, L.P., 796 F. Supp.2d 753, 763-64 ("Since any obligations Litton might have had in processing plaintiff's ... loan modification could only have arisen from the alleged contract between the parties, and thus do not flow from the common law, plaintiff has failed to allege any duty that could serve as the basis for a negligence claim."); Acuna v. Chase Home Finance, LLC, No. 3:10-cv-905, 2011 WL 1883089, at *7 (E.D. Va. May 17, 2011) (holding that when plaintiff's home was foreclosed on despite promises to the contrary "[t]he misrepresentations cited by Acuna all arise out of parties' contractual duties, as they pertain to the parties' obligations under the Note and Deed of Trust, including loan payments, the foreclosure or the modification process"). Consequently, the McFaddens' claim for negligence is not recognized under Virginia law and must be dismissed.

5. *Count VI: White's Violation of the Virginia Consumer Protection Act ("VCPA")*

Plaintiffs allege that White violated the VCPA, Va. Code. Ann. § 59.1 – 196 et seq., by either negligently or willfully (1) misrepresenting that he had been properly appointed, (2) misrepresenting that he would act as a fiduciary towards the Plaintiffs, and (3) by failing to comply with his fiduciary duties. (Compl. ¶¶ 71, 73, 74).[3] This claim fails as a matter of law

---

[3] Plaintiffs do not allege in their Complaint that Flagstar or Fannie Mae violated the VCPA. (Compl. ¶ 68). The Court notes that if they had so alleged, the claim would be dismissed because banks are statutorily exempt from the VCPA. See Va. Code Ann. § 59.1-199(D); Schmidt v. Wells Fargo Home Mtg., No. 3:11-cv-059, 2011 WL 1597658, at *4 (E.D. Va. Apr. 26, 2011) (holding the VCPA expressly excludes banks).

because White is statutorily exempt from the VCPA. Moreover, Plaintiffs have failed to allege sufficient facts to state a claim under the VCPA.

The purpose of the VCPA is "to promote the fair and ethical standards of dealings between suppliers and the consuming public." Va. Code Ann. § 59.1-197. However, the VCPA does not apply to "[a]ny aspect of a consumer transaction which aspect is authorized under laws or regulations of this Commonwealth or the United States...." Id. at 59.1-199(A). Virginia law expressly provides for the existence of trustees and substitute trustees under a deed of trust – the exact function White performed in this case. See Va. Code Ann. § 55-59(9) ("The party secured by the deed of trust ... shall have the right and power to appoint a substitute trustee or trustees for any reason and, regardless of whether such right and power is expressly granted in such deed of trust, by executing and acknowledging an instrument designating and appointing a substitute."). Flagstar, as the present holder or authorized agent of the holder of the note executed a Substitution of Trustee (Compl. Ex. E), appointing White as a substitute trustee. Once White was appointed, Virginia law expressly provides the authority for White to sell the property in the event of default. See Va. Code Ann. § 55-59(7) ("In the event of default in the payment of the debt secured ... then at the request of any beneficiary the trustee shall forthwith declare all the debts and obligations secured by the deed of trust at once due and payable and may take possession of the property and proceed to sell the same at auction...."). Additionally, the VCPA does not apply to any aspect of a transaction regulated by the Federal Consumer Credit Protection Act. See Va. Code Ann. § 59.1-199(C). Since consumer real estate transactions are covered by the Federal Consumer Credit Protection Act, the VCPA is inapplicable. See Smith v. U.S. Credit Corp., 626 F. Supp. 102, 103 (E.D. Va. 1985). Therefore, because White's appointment and actions with regard to the foreclosure sale are expressly

provided for under Virginia law and part of a transaction regulated by the Federal Consumer Credit Protection Act, White is exempt under the VCPA.

The Court also finds that Plaintiffs have failed to allege any facts that allow the Court to conclude that White satisfies the definition of a "supplier" or that White's actions fall within the definition of a "consumer transaction" under the VCPA. Merely stating that White is a "supplier" and that the loan and related foreclosure were a "consumer transaction," (Compl. ¶¶ 69,70), is insufficient under Iqbal, which requires the Plaintiffs to plead more than legal conclusions. Iqbal, 129 S.Ct. at 1951.

A supplier is defined as: "a seller, lessor or licensor who advertises, solicits or engages in consumer transactions, or a manufacturer, distributor or licensor who advertises and sells, leases or licenses *goods or services* to be resold, leased or sublicensed by other persons in consumer transactions." Va. Code. Ann. § 59.1 – 198 (emphasis added). The term "consumer transaction" is defined by the VCPA to include, inter alia, the "advertisement, sale, lease or offering for sale or lease, of *goods or services* to be used primarily for personal, family or household purposes...." Id. (emphasis added). Plaintiffs' Complaint concerns a real estate transaction, specifically the terms of a loan modification and the resulting foreclosure when the modification failed. Without pleading facts that show how a loan modification and foreclosure are consumer transactions rather than credit transactions, which are statutorily exempt from the VCPA, this Court finds Plaintiffs have failed to plead sufficient facts to support their allegation.

Finally, the Court finds that Plaintiffs have failed to allege sufficient facts to show that White misrepresented that he would act as a fiduciary towards the Plaintiffs or failed to comply with his fiduciary duties. In fact, Plaintiffs' Complaint is bereft of any allegations regarding White's conduct other than the fact that "plaintiffs received a notice from White that their home

14

was to be sold at a foreclosure sale," (Compl. ¶ 22), and that "on March 10, 2011, White conducted a foreclosure sale," (Compl. ¶ 27). Without more, Plaintiffs have failed to state a claim. Consequently, because White is either statutorily exempt from the VCPA or because Plaintiffs have failed to plead a violation of the VCPA, this claim must be dismissed.

## IV. Conclusion

For the above reasons, the Court finds that Plaintiffs' claims are preempted by HOLA and must be dismissed. Additionally, even if not preempted the claims must still be dismissed for failure to state a claim. Defendant White's Motion to Dismiss, (Dkt. Nos. 8 & 9) and Defendants Flagstar and Fannie Mae's Motion to Dismiss, (Dkt. Nos. 13 & 14) are therefore **GRANTED**.

An appropriate order shall issue this day.

ENTER: This 9th day of January, 2012.

*/s/ James C. Turk*
Senior United States District Judge